**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOANN MCLAUGHLIN, on behalf of Plaintiff and the class members described herein, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| ROSEBUD LENDING DRT, doing business as MyQuickWallet.com; PRINCETON ALTERNATIVE FUNDING, LLC; PRINCETON ALTERNATIVE INCOME FUND, LP; and JOHN DOES 1-20, | ) ) ) ) ) ) ) ) ) | 1:23-cv-05825 |
| Defendants. | ) ) ) | |

## COMPLAINT – CLASS ACTION

1.     Plaintiff JoAnn McLaughlin ("Plaintiff") brings this action to secure redress from predatory and unlawful loans (such as Exhibit A). The loans are made in the name of Defendant Rosebud Lending DRT d/b/a MyQuickWallet.com ("Rosebud DRT"). The parties responsible for making and funding the loans are Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, LP and John Does 1-20.

2.     Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count IV).

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964,

1

28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under 28 U.S.C. § 1332(d).

4.     This Court has personal jurisdiction over each Defendant because they:

a.     Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5.     Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6.     Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7.      Plaintiff JoAnn McLaughlin is a resident of the Northern District of Illinois.

### Defendants

8.      Defendant Rosebud Lending DRT, doing business as MyQuickWallet.com, is an online lender that offers loans to consumers at annual percentage rates exceeding 700% (Exhibit A, loan agreement) via the website www.MyQuickWallet.com. It claims to be "an economic development arm and entity of the Rosebud Sioux Tribe, a sovereign nation located within the United States of America and operating within the Tribe's reservation"(Exhibit A) and "the tribal lending agency of Rosebud Lending, a subsidiary agency of the Rosebud Economic Development Corporation, an economic development arm and entity of the Rosebud Sioux Tribe, a sovereign nation located within the United States of America and operating within the Tribe's reservation." (Exhibit B, website) It uses the address of  P.O. Box 1146, Mission, SD 57555. The Rosebud Sioux Tribe is hereinafter referred to as the "Tribe."

9.      In fact, at the time of the loan to Plaintiff, the funds to conduct the lending business operated through www.MyQuickWallet.com were provided by Princeton Alternative Income Fund, LP. (Exhibit C)

10.     In 2019, Jack Cook, president of both Princeton Alternative Funding, LLC and Princeton Alternative Income Fund, LP, testified before the United States Bankruptcy Court for the District of New Jersey that Princeton Alternative Income Fund, LP funded tribal loans made by four Rosebud entities including Rosebud Lending DRT d/b/a MyQuickWallet.com.

11.     Defendant Princeton Alternative Income Fund, LP is a limited partnership entity organized under Delaware law with its principal office at 100 Canal Pointe Blvd., Ste. 208, Princeton, NJ 08540-7063. Its registered agent and office is Delaware Business Incorporators, Inc., 3422 Old Capitol Trl., Ste. 700, Wilmington, DE 19808.

12.     Defendant Princeton Alternative Funding, LLC is the sole general partner of

3

Defendant Princeton Alternative Income Fund, LP. As such, it is liable for all acts of Princeton Alternative Income Fund, LP.

13.     Defendant Princeton Alternative Funding, LLC is a limited liability company organized under Delaware law with its principal office at 100 Canal Pointe Blvd., Ste. 208, Princeton, NJ 08540-7063. Its registered agent and office is Delaware Business Incorporators, Inc., 3422 Old Capitol Trl., Ste. 700, Wilmington, DE 19808.

14.     On information and belief, Defendants Princeton Alternative Funding, LLC and Princeton Alternative Income Fund, LP are not members of the Tribe or owned by members of the Tribe.

15.     These entities pay the Tribe a small percentage of the revenues generated from loans made through www.MyQuickWallet.com in a "rent-a-tribe" agreement. The Tribe's involvement in the lending business is merely superficial -- its only real contribution is to provide a cloak of sovereign immunity for lending activities.

16.     MyQuickWallet.com was created for the benefit of non-tribal persons.

17.     The Tribe has had a number of online payday websites, all of which charge consumers triple-digit interest rates, including:

      a.     AdvanceMeToday.com, affiliated with "Rosebud Lending AMT";

      b.     FirstPayLoans.com, affiliated with"Rosebud Lending BHL";

      c.     PixyCash.com, affiliated with "Rosebud Lending PCL";

      d.     Zocaloans.com, affiliated with "Rosebud Lending LZO";

      e.     QCredit.com, owned by "Rosebud Lending RQC."

18.     On information and belief, each of these websites represents a "rent-a-tribe" scheme with a different, non-tribal investor or investors.

19.     On information and belief, the lending scheme goes back to at least 2015 and continues to this day.

20.     On information and belief, Defendants' scheme has injured thousands, if not tens

4

of thousands of individuals. Defendants seek out and exploit society's most vulnerable persons.

21. Defendants John Does 1-20 are other natural or artificial persons involved in the making, underwriting, financing and collection of the loans made through www.MyQuickWallet.com. Their identity, which has been hidden as a key part of the underlying scheme, will be easily established in this litigation.

**FACTS RELATING TO PLAINTIFF JOANN MCLAUGHLIN**

22. On or about April 5, 2021, Plaintiff JoAnn McLaughlin obtained a line of credit from Rosebud DRT. (Exhibit A).

23. In addition to line of credit disclosures, Plaintiff was furnished disclosures for an advance with an amount financed of $750 and an annual percentage rate of 782%.

24. The payment schedule on the account was as follows:

   a.  2021-06-15 -- $141.72 + $7.00 = $148.72

   b.  2021-06-30 -- $141.72 + $7.00 = $148.72

   c.  2021-07-15 -- $141.72 + $7.00 = $148.72

   d.  2021-07-30 -- $141.72 + $7.00 = $148.72

   e.  2021-08-13 -- $141.72 + $7.00 = $148.72

   f.  2021-08-31 -- $141.72 + $7.00 = $148.72

   g.  2021-09-15 -- $141.68 + $7.00 = $148.68

25. Plaintiff made payments on the loan, including interest.

26. Rosebud DRT has been contacting Plaintiff for the purpose of collecting the loan.

27. Exhibit A is a standard form loan agreement used by Rosebud DRT on a regular basis.

28. Through www.MyQuickWallet.com, Defendants regularly made loans to individuals in Illinois at such rates.

29. The loan to Plaintiff was obtained for personal, family or household purposes and not for business purposes.

30.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

31.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

32.     Defendants sought out Illinois residents for such loans.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

33.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

34.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

35.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

36.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan

6

Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

37.    Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violates the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

38.    Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

39.    Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.*, 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

40.    The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569; *In the Matter of Money Mutual, LLC,* No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

41.    Defendants were on notice of the illegality of their conduct as a result of a notice issued by the state of Washington (Exhibit D).

7

**RENT-A-TRIBE SCHEMES**

42.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

43.     Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

44.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

45.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

46.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

47.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

48.     These so-called "tribal lenders" usually do not survive scrutiny when examined

closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

49.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

50.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

51.     Indeed, "[t]ribes and their officers are not free to operate outside of Indian lands without conforming their conduct in these areas to federal and state law." *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 128 (2d Cir. 2019).

52.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

53.     Plaintiff incorporates paragraphs 1-52.

54.     This claim is against all Defendants.

55.     There is a controversy between Plaintiff and the class, on the one hand, and

Defendants, on the other, as to whether Plaintiff must repay the outstanding loan made to her (Exhibit A, in Plaintiff's case).

56.     Declaratory relief will resolve such controversy.

57.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

58.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

59.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Rosebud Lending DRT at more than 9% interest (c) which loan has not been paid in full.

60.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

61.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

62.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

63.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

64.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

65.     Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

66.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.      Injunctive relief;

    ii.     Declaratory relief;

    iii.    Restitution of all amounts collected on the loans from members of the class;

    iv.    Costs of suit; and

    v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

67.     Plaintiff incorporates paragraphs 1-52.

68.     This claim is against all Defendants.

69.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

70.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

71.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

72.     The class consists of (a) all individuals with Illinois addresses(b) to whom a loan was made in the name of Rosebud Lending DRT at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

73.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

11

74.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

75.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

77.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.      Individual actions are not economically feasible.

b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.      Damages as provided in 815 ILCS 205/6;

ii.     Attorney's fees, litigation expenses and costs of suit; and

iii.    Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

79.     Plaintiff incorporates paragraphs 1-52.

80.     This claim is against all Defendants.

81.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

82.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois

12

Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

**CLASS ALLEGATIONS**

83.     Plaintiff bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

84.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Rosebud Lending DRT at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

85.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

86.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

87.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

88.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

89.     Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

90.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Compensatory damages;

13

        ii.        Punitive damages;

        iii.        Attorney's fees, litigation expenses and costs of suit; and

        iv.        Such other and further relief as the Court deems proper.

## COUNT IV – RICO

91.      Plaintiff incorporates paragraphs 1-52.

92.      This claim is against Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, and John Does 1-20, who are the RICO "persons." 18 U.S.C. § 1964(3).

93.      All loans made in the name of Rosebud Lending DRT to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

94.      The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

95.      Rosebud Lending DRT is an "enterprise" engaged in and whose activities affect interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

96.      Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, and John Does 1-20 are associated with this enterprise, in that they direct the making of loans by Rosebud Lending DRT and finance the operation.

97.      The enterprise has an ongoing organization with an ascertainable structure, and it functions as a continuing unit with separate roles and responsibilities

98.      Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, and John Does 1-20 conducted or participated in the conduct of the affairs of Rosebud Lending DRT through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

99.      Plaintiff was deprived of money as a result.

100.     Plaintiff was injured as a direct result of Defendants' violations of 18 U.S.C. § 1962

by, among other things, the payment of unlawful debt to the enterprise, which money transfers would not have been made but for Defendants' conduct.

## CLASS ALLEGATIONS

101.    Plaintiff brings this claim on behalf of a class.

102.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Rosebud Lending DRT at more than 9% interest (c) which loan was made on or after a date four years prior to the filing of suit.

103.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

104.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

105.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.    Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.    Whether Rosebud Lending DRT is an "enterprise."

      c.    Whether Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, and John Does 1-20 are associated with Rosebud Lending DRT.

      d.    Whether Defendants Princeton Alternative Funding, LLC, Princeton Alternative Income Fund, and John Does 1-20 conducted or participated in the affairs of Rosebud Lending DRT through a pattern of making and collecting unlawful loans.

106.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

107.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

108.     A class action is superior for the fair and efficient adjudication of this matter, in that:

a.     Individual actions are not economically feasible.

b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i.     Treble damages;

ii.     Attorney's fees, litigation expenses and costs of suit; and

iii.     Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

18

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely relevant to the litigation of this case. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman